**FOR PUBLICATION**



ATTORNEY FOR APPELLANT:

**W. EDWARD SKEES**
The Skees Law Office
New Albany, Indiana

ATTORNEYS FOR APPELLEES:

**RICHARD T. MULLINEAUX**
**CRYSTAL G. ROWE**
**ASHLEY GILLENWATER EADE**
Kightlinger & Gray, LLP
New Albany, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SHARON HANDY, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 22A01-1403-CT-125 |
| | ) | |
| P.C. BUILDING MATERIALS, INC., | ) | |
| PC PROPERTIES, LLC, DAVID | ) | |
| A. STEMLER, and KAREN L. STEMLER, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE FLOYD CIRCUIT COURT
The Honorable Susan L. Orth, Special Judge
Cause No. 22C01-1207-CT-1068

**November 19, 2014**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Sharon Handy appeals the trial court's entry of summary judgment in favor of P.C. Building Materials, Inc., PC Properties, LLC, David A. Stemler, and Karen L. Stemler (collectively "PC") on Handy's negligence claim against PC. The sole issue presented for our review is whether the trial court properly entered summary judgment in favor of PC. Concluding that genuine issues of material fact remain for determination by a jury, we reverse and remand for further proceedings.

**Facts and Procedural History[1]**

The limited undisputed facts available for our review indicate that on Saturday, July, 10, 2010, Handy entered onto the P.C. Building Materials store property in New Albany. The store was open for business and Handy went to the store to shop for items for a home remodeling project. While inside the store, Handy spoke to a store salesperson who directed her to look at some granite countertops that were displayed outside the store. The countertops were leaning against the outside wall of the store, just to the side of the front entrance. Handy moved the countertops around a bit and took some rough measurements before leaving the premises. The next day, Sunday, July 11, 2010, Handy decided to return to the store to again look at the granite and to take precise measurements to see if the countertops might work in her remodeling project. Handy was not sure whether or not the store would be open that day. The store was closed when Handy arrived. However, since the

---

[1] We heard oral argument on October 22, 2014, at the Indiana University Mauer School of Law in Bloomington. We commend counsel for the quality of their advocacy and we thank the school for its hospitality.

countertops were still outside the store, Handy decided to measure them. There were at least two granite countertops leaning against the front outside wall of the store, one right in front of the other. After she measured the first countertop as it leaned against the wall, Handy then pulled the first countertop forward toward her body in order to measure the second countertop that was behind it. Because she moved the first countertop "maybe an inch or so more past its balancing point" the granite became "way too heavy." Appellees' App. at 37. The first countertop fell over on Handy's foot and "kicked out" the countertop behind it so that it too fell on her foot. *Id*. at 36. Handy, who was wearing flip-flops at the time, suffered an injury to her toe.

On July 10, 2012, Handy filed a negligence complaint against PC seeking damages for her injury. On September 26, 2013, PC filed a motion for summary judgment and designation of evidence arguing that Handy was a trespasser on the premises, or at best a licensee, and that PC breached no duty to her as a matter of law. On November 1, 2013, Handy served her response and designation of evidence in opposition to PC's motion, arguing that she was a business invitee and that a genuine issue of material fact remained as to whether PC breached its duty to her.[2] Following a hearing, the trial court granted PC's motion for summary judgment. Specifically, the court concluded that because Handy entered the premises without PC's permission, she was a trespasser to whom PC owed only a duty to

---

[2] We note that on October 29, 2013, Handy filed with the trial court a "Notice of Agreed Extension of Time" stating that PC had agreed to an extension of time for Handy to respond to the motion for summary judgment up to and including November 1, 2013. Appellees' App. at 44. PC did not object to the notice or move to strike Handy's response and designation of evidence at the time it was filed. PC similarly made no objection to the timeliness of Handy's summary judgment response during the summary judgment hearing.

refrain from wilfully or wantonly injuring. The trial court further concluded that, even applying a higher standard of care, there was no genuine issue of material fact indicating that the countertops were a latent danger or any facts to indicate that PC should have realized that the countertops presented an unreasonable danger that Handy would not have discovered. Thus, the trial court concluded, as a matter of law, that PC did not breach any duty of care to Handy. This appeal ensued.

**Discussion and Decision**

**Section 1 – Standard of Review and Designated Evidence**

Our standard of review in summary judgment cases is well settled.

> When reviewing the grant or denial of summary judgment, this court applies the same standard as the trial court. Specifically, we must determine whether there is a genuine issue of material fact requiring a trial and whether the moving party is entitled to judgment as a matter of law. Neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. A party seeking summary judgment must make a prima facie showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the nonmoving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial. On appeal, we will assess the trial court's decision to ensure that the parties were not improperly denied their day in court. A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where undisputed material facts are capable of supporting conflicting inferences on such an issue.

*Hassan v. Begley*, 836 N.E.2d 303, 306-07 (Ind. Ct. App. 2005) (citations omitted). "In determining whether genuine issues of material fact exist, the court must accept as true those facts established by evidence favoring the nonmoving party and resolve all doubts against the moving party." *Id*. at 306. The trial court's grant of a motion for summary judgment comes

4

to us cloaked with a presumption of validity, *Altevogt v. Brand*, 963 N.E.2d 1146, 1150 (Ind. Ct. App. 2012), and the party appealing from a summary judgment decision has the burden of persuading us that the trial court's decision was erroneous. *Walker v. Martin*, 887 N.E.2d 125, 130 (Ind. Ct. App. 2008), *trans. denied*.

In the present case, the trial court entered findings of fact and conclusions thereon in support of it entry of summary judgment. "Special findings are not required in summary judgment proceedings and are not binding on appeal." *Warren v. Warren*, 952 N.E.2d 269, 269 (Ind. Ct. App. 2011). However, such findings offer this Court valuable insight into the trial court's rationale for its review and facilitate our appellate review. *Id*.

PC requests that we begin our review by determining what evidence was properly designated to the trial court and is therefore properly before this Court. PC filed its motion for summary judgment and designation of evidence on September 26, 2013. Handy did not serve her response and designation of evidence in opposition to summary judgment until November 1, 2013.[3] PC asserts that this Court should presume that the trial court, in reaching its decision, appropriately disregarded as untimely Handy's response and designation of evidence in opposition to summary judgment. Indiana Trial Rule 56(C) provides that a party opposing a summary judgment motion has thirty days after service of the motion to serve a response and any opposing affidavits. "For cause found," a trial court is authorized to "alter

---

[3] The record indicates that, although Handy served her summary judgment response by mail on November 1, 2013, it was filed with the trial court on November 5, 2013. The record also indicates that Handy filed a supplemental designation of evidence on January 24, 2014.

5

any time limit set forth in this rule upon motion made within the applicable time limit." Ind. Trial Rule 56(I).

In *HomeEq Servicing Corp. v. Baker*, our supreme court described this as a "bright line rule" and explained,

> [W]here a nonmoving party fails to respond within thirty days by either (1) filing affidavits showing issues of material fact, (2) filing his own affidavit under Rule 56(F) indicating why the facts necessary to justify his opposition are unavailable, or (3) requesting an extension of time in which to file his response under 56(I), the trial court lacks discretion to permit the party to thereafter file a response. In other words, a trial court may exercise discretion and alter time limits under 56(I) only if the nonmoving party has responded or sought an extension of time within thirty days from the date the moving party filed for summary judgment.

883 N.E.2d 95, 98 (Ind. 2008) (quoting *Desai v. Croy*, 805 N.E.2d 844, 850 (Ind. Ct. App. 2004), *trans. denied*.). The court recently reiterated this procedural bright line rule, stating that it was now "firmly entrenched as an article of faith in Indiana law," providing "clarity and certainty to an area of law that for too long lacked both." *Mitchell v. 10th and The Bypass, LLC*, 3 N.E.3d 967, 973 (Ind. 2014).

Here, on October 29, 2013, Handy's counsel filed with the trial court a "Notice of Agreed Extension of Time" stating that counsel for PC had agreed to allow him an extension of time to respond to the motion for summary judgment. However, at no time within the thirty-day response period did Handy's counsel file a request with the trial court for an extension of time in which to file the summary judgment response. Absent a formal request filed with and subsequently granted by the trial court, we agree with PC that the trial court was without the discretion to accept Handy's late-filed summary judgment response. As we

6

have recognized in this exact context, although "we encourage collegiality among members of the legal profession and endeavor to promote cooperation and conflict resolution outside the walls of the courthouse, in certain circumstances parties must still seek formal relief directly from the trial court." *Booher v. Sheeram, LLC*, 937 N.E.2d 392, 394 (Ind. Ct. App. 2010), *trans. denied* (2011). This is an example of such a circumstance. *Id.* Because Handy failed to file a response to summary judgment or request an extension from the trial court within the prescribed time, the trial court had no discretion to alter the time limits in Trial Rule 56, and Handy's response should not have been considered. *DeLage Landen Fin. Servs., Inc. v. Cmty. Mental Health Ctr., Inc.*, 965 N.E.2d 693, 699 (Ind. Ct. App. 2012), *trans. denied*.[4]

Considering only the evidence designated by PC, the question remains as to whether summary judgment in its favor was appropriately granted. Indeed, summary judgment "shall not be granted as a matter of course because the opposing party fails to offer opposing affidavits or evidence, but the court shall make its determination from the evidentiary matter

---

[4] We note that PC did not file a motion to strike or otherwise object to Handy's initial designation of evidence or the trial court's consideration of the same during the summary judgment hearing. Instead, PC raises the timeliness issue for the first time on appeal in a footnote in its appellee brief. It is well settled that a complaining party has a duty to direct the trial court's attention to a defective filing, and failure to raise an objection constitutes waiver on appeal. *See e.g. Paramo v. Edwards*, 563 N.E.2d 595, 600 (Ind. 1990). Moreover, "[a] party may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect or misconduct." *Countrymark Coop., Inc. v. Hammes*, 892 N.E.2d 683, 695 (Ind. Ct. App. 2008), *trans. denied*. By not objecting to the timing of Handy's initial designation of evidence, PC not only essentially invited the trial court to abuse its discretion and consider the evidence, PC has waived its ability to assert that error on appeal. Thus, while we necessarily acknowledge that the trial court here should not have considered the late-filed designated evidence, we remind PC that a party must still object to inadmissible evidence to obtain appellate review of such error. To conclude otherwise would be tantamount to treating a trial court's erroneous consideration of late summary judgment filings as fundamental error. Absent express direction by our supreme court, we are not inclined to do so. Nevertheless, as we conclude, notwithstanding PC's waiver of the issue and even considering solely the evidence designated by PC, summary judgment is inappropriate.

designated to the court." Ind. Trial Rule 56(C). Summary judgment is appropriate only if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *South Shore Baseball, LLC v. DeJesus*, 11 N.E.3d 903, 907 (Ind. 2014).

Handy's complaint sounds in negligence. To prevail on a claim of negligence, the plaintiff must prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant, and (3) an injury to the plaintiff as a proximate result of the breach. *Key v. Hamilton*, 963 N.E.2d 573, 579 (Ind. Ct. App. 2012), *trans. denied*. Summary judgment is rarely appropriate in negligence cases because they are particularly fact sensitive and are "governed by a standard of the objective reasonable person—one best applied by the jury after hearing all of the evidence." *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004). Still, summary judgment is appropriate when the undisputed material evidence negates an element of the plaintiff's claim. *Id*. at 385.

## Section 2 – Premises Liability and Duty

Handy asserts that summary judgment was inappropriate because genuine issues of material fact remain regarding her status on the premises and PC's corresponding duty of care. We agree.

A person entering upon the land of another enters as an invitee, a licensee, or a trespasser. *Rhoades v. Heritage Invs., LLC*, 839 N.E.2d 788, 791 (Ind. Ct. App. 2005), *trans. denied* (2006). "The person's status on the land defines the nature of the duty owed by the landowner to the visitor." *Huffman v. Dexter Axle Co.*, 990 N.E.2d 947, 952 (Ind. Ct. App.

8

2013) (quoting *Rhoades*, 839 N.E.2d at 791). As a general rule, a person's status on the land, along with the duty owed by the landowner, is a matter left to the determination of the trial court and not the jury. *Winfrey v. NLMP, Inc.*, 963 N.E.2d 609, 613 (Ind. Ct. App. 2012). However, a person's status on the land may turn on factual issues that must be resolved by the trier of fact, thereby precluding disposition by summary judgment. *Kopczynski v. Barger*, 887 N.E.2d 928, 931 (Ind. 2008). Such is the case here.

We have summarized the nature of the duty owed to visitors as follows:

> The highest duty of care is owed to an invitee; that duty being to exercise reasonable care for the invitee's protection while he or she is on the premises. As to a licensee, the duty is to refrain from willfully or wantonly injuring him or her or acting in a manner to increase his or her peril; this includes the duty to warn a licensee of any *latent* (non-obvious) danger on the premises of which the landowner has knowledge. Finally, the duty owed to a trespasser is the duty merely to refrain from wantonly or willfully injuring him or her after discovering his or her presence.

> An invitee is a person who is invited to enter or remain on another's land. There are three categories of invitee: the public invitee, the business visitor, and the social guest. Licensees and trespassers are persons who enter the land of another for their own convenience, curiosity, or entertainment and take the premises as they find them. Unlike trespassers, however, licensees have a privilege to enter or remain on the land by virtue of the landowners or occupier's permission or sufferance. In determining whether an individual is an invitee or licensee, the distinction between the terms "invitation" and "permission" is critical.

*Yates v. Johnson Cnty. Bd. of Comm'rs*, 888 N.E.2d 842, 848-49 (Ind. Ct. App. 2008) (citations and some quotation marks omitted).

In *Burrell v. Meads*, 569 N.E.2d 637, 642-643 (1991), our supreme court formally adopted the "invitation test" as the analytical basis for deciding which visitors will be granted invitee status, concluding that "examination of the invitation itself must be the first step of

9

any inquiry into invitee status." *Id.* "An invitation differs from mere permission in this: an invitation is conduct which justifies others in believing that the possessor desires them to enter the land; permission is conduct justifying others in believing that the possessor is willing that they shall enter if they desire to do so." *Androusky v. Walter*, 970 N.E.2d 687, 691-92 (Ind. Ct. App. 2012) (quoting *Christmas v. Kindred Nursing Ctr. Ltd. P'ship*, 952 N.E.2d 872, 879 (Ind. Ct. App. 2011) (citation omitted)). The decisive factor in determining whether a landowner has extended an "invitation" or "permission" is the interpretation that a reasonable person would put upon the landowner's words and actions given all of the surrounding circumstances. *Rhoades*, 839 N.E.2d at 792. "An invitation may be express or implied." *Yates*, 888 N.E.2d at 849. "If a landowner induces a person to enter land by express or reasonably implied invitation, then the landowner leads that guest to believe that the land has been prepared for his or her safety." *Id.*

Based upon the limited designated facts, we can affirmatively conclude that Handy was not a trespasser. We respectfully disagree with the trial court and conclude that the mere fact that Handy did not have express verbal permission from PC to enter the premises on that Sunday did not make her a trespasser. We further disagree with PC's assertion that the fact that the store was closed when Handy entered onto the property is dispositive as to Handy's

10

status.[5] Although the store was closed, a reasonable trier of fact could infer that PC left the countertops displayed just outside the front entrance of the store for the purpose of attracting members of the public and potential customers to view and consider purchasing those items.[6] There is no indication in the record that access to the displayed items was in any way altered or limited by the fact that the store was closed. It may reasonably be inferred that, had PC not wished to attract potential customers when its store was closed, it would have moved the countertops away from any type of public access.

It is undisputed that Handy entered onto the property to view the countertops for potential purchase, the exact purpose for which they were displayed, and not simply for her own convenience and curiosity. On its face, PC's conduct justified others in believing that PC was willing to have them enter the premises if they desired to do so. Thus, at a minimum, Handy was a licensee with the privilege to enter the premises by virtue of PC's permission or sufferance. The question becomes whether that privilege was also extended by invitation.

---

[5] PC repeatedly emphasizes the fact that the store was closed when Handy entered onto the property and cites to *Taylor v. Duke*, 713 N.E.2d 877 (Ind. Ct. App. 1999), as support for its position that she was a trespasser or, at most, a licensee. In *Taylor*, we held that a homeless teenager who sought shelter under a trailer parked against the back of a closed store in the loading dock area was a trespasser. *Id*. at 881. Our conclusion, however, was in no way contingent upon the fact that the store was closed but rather was based upon the fact that the plaintiff entered the premises solely for his own convenience (seeking shelter) and not for any purpose for which the premises were generally held open to the public. *Id*. We find the facts of *Taylor* wholly inapposite to this case.

[6] PC takes issue with the phrase "public display" used by Handy in her brief and argues that the designated evidence "does not support the idea that these two granite countertop pieces were on public display." Appellees' Br. at 16-17 n.12. Construing the facts favorable to Handy, we conclude that "public display" is a reasonable description of how the countertops were stored just outside the front entrance of the building.

11

Handy urges that she was an invitee/business visitor[7] and that she was impliedly invited onto the PC premises.  Based upon the limited record before us, we cannot determine as a matter of law whether Handy had an implied invitation to enter onto the premises, or merely permission to do so.   That is to say, viewing the evidence favoring Handy and resolving all doubts against PC, genuine issues of material fact remain as to whether PC engaged in conduct which would have justified a reasonable person in Handy's position in believing that PC desired her to enter onto the premises, thus making her an invitee.  Under the circumstances, PC has not met its burden of demonstrating that it is entitled to judgment as a matter of law as to Handy's status on the premises.

### Section 3 – Premises Liability and Breach

PC maintains that, even assuming that Handy qualified as an invitee and was owed the highest duty of reasonable care, such duty was not breached by PC as a matter of law.  The question of whether there has been a breach of duty in a negligence action is generally a jury question and inappropriate for resolution by summary judgment.  *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. 2003).  Indeed, whether a duty of care has been breached is only a question of law when the facts are undisputed and only one inference can be drawn from them.  *Id*.  We cannot say that the limited facts before us lead to but one inference.

---

[7] A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.  *Burrell*, 569 N.E.2d at 642 (citing the RESTATEMENT (SECOND) OF TORTS § 332).

Indiana has adopted the Restatement (Second) of Torts Section 343, which provides that a possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Burrell,* 569 N.E.2d at 639-40 (quoting RESTATEMENT (SECOND) OF TORTS § 343 (1965)). All three conditions set forth in Section 343 must be met for liability to attach. *Harradon v. Schlamadinger,* 913 N.E.2d 297, 301 (Ind. Ct. App. 2009), *trans. denied* (2010). Additionally, Section 343A of the Restatement (Second) of Torts, which discusses known or obvious dangers, is meant to be read along with Section 343. *Christmas*, 952 N.E.2d at 881. That Section "provides, in part, as follows: 'A possessor of land is not liable to his invitees for physical harm caused to them by any ... condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.'" *Id.* (citing *Smith v. Baxter,* 796 N.E.2d 242, 245 (Ind. 2003) (quoting RESTATEMENT (SECOND) OF TORTS § 343A)). Indeed, "'[t]he comparative knowledge of a possessor of land and an invitee regarding known or obvious dangers may properly be taken into consideration in determining whether the possessor breached the duty of reasonable care under Sections 343 and 343A of the Restatement (Second) of Torts.'" *Id.* (quoting *Smith,* 796 N.E.2d at 245).

Here, reasonable people could differ as to whether the granite countertops represented a known or obvious danger to Handy. Moreover, the obviousness of any danger does not resolve the issue, *see Rhodes*, 805 N.E.2d at 388, as questions remain whether PC: (1) knew or by the exercise of reasonable care should have realized that the granite involved an unreasonable risk of harm to Handy; (2) should have expected that she would not realize the unreasonable risk of harm of moving, pulling, or tipping the granite forward; and (3) failed to exercise reasonable care to protect her against the danger. In short, assuming that Handy was an invitee on the premises, genuine issues of material fact remain as to whether PC breached its duty of care to her.

Based on the foregoing, the trial court erred when it entered summary judgment in favor of PC. We are mindful that even if this Court believes that the nonmoving party will not be successful at trial, summary judgment should not be granted where material facts conflict or conflicting inferences are possible. *Dunaway v. Allstate Ins. Co.*, 813 N.E.2d 376, 384 (Ind. Ct. App. 2004). Therefore, we reverse the trial court's entry of summary judgment and remand for further proceedings consistent with this opinion.

Reversed and remanded.

MATHIAS, J., concurs.

RILEY, J., concurs in part and dissents in part with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SHARON HANDY, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 22A01-1403-CT-125 |
| | ) | |
| P.C. BUILDING MATERIALS, INC., | ) | |
| PC PROPERTIES, LLC, DAVID A. | ) | |
| STEMLER, and KAREN L. STEMLER, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

**RILEY, Judge, concurring in part and dissenting in part**

While I agree with the majority's conclusion regarding the extent of the designated evidence available for our review, I respectfully dissent from its conclusion that a genuine issue of material fact remains as to Handy's status on the premises and PC's corresponding duty of care. Although the majority could "affirmatively conclude that Handy was not a trespasser," based on "the limited record," it could not determine "as a matter of law whether Handy had an implied invitation to enter onto the premises, or merely permission to do so." Slip op. pp. 10, 12.

Finding that the question of Handy's status is a matter of law, my analysis of the designated evidence is in line with the trial court's conclusion that Handy is "a trespasser," or at best, a licensee. *See* Appellant's App. p. 10; *Morningstar v. Maynard*, 798 N.E.2d 920,

922 (Ind. Ct. App. 2003). "Even if considering a stricter standard, [PC] has not presented a genuine issue that the countertops were a latent danger, and further nothing to indicate that [PC] could have realized the countertops presented an unreasonable danger that [Handy] would have discovered." Appellant's App. p. 10. I would affirm the trial court's summary judgment in every respect.