Amy M. **RHODES** and Janet Gurtz as Co–Personal Representatives of the Estate of Dwaine D. Gurtz, Deceased, Appellants (Plaintiffs below),

v.

Mark D. **WRIGHT**, Stacey Wright, Chris E. Wright, Julie Wright, Alan Wright, and Judy Wright, d/b/a Wright Brothers Farm, Appellees (Defendants below).

No. 88S05–0310–CV–483.

Supreme Court of Indiana.

March 31, 2004.

Patrick D. Murphy, South Bend, IN, Attorney for Appellants.

James E. Bourne, New Albany, IN, Attorney for Appellees.

SULLIVAN, Justice.

The trial court granted summary judgment for Defendants in a negligence action for the death of a worker on its premises. The Court of Appeals affirmed, holding that Defendants did not control the area where the accident occurred and that the danger was obvious. Finding genuine issues of material fact in this regard, we reverse.

### Background

On February 13, 2001, some time after 3:00 a.m., Dwaine D. Gurtz, a truckdriver for Tyson Foods, Inc., was struck and killed by a forklift while at Wright Brothers Farm. Defendants own the farm and raise chickens under a contract for Tyson. The accident occurred while Tyson employees were at the farm collecting some chickens. Gurtz parked his truck near one of the chicken houses and began unbooming chains from the trailer of the truck. Another Tyson employee who was in a chicken house picking up cages of chickens backed a forklift out of the chicken house. The forklift struck Gurtz from behind, pinning him between the back of the forklift and the trailer. He died approximately one hour later.

At the time of the accident, it was dark and foggy. The lights in the chicken houses were off and the outside of the chicken houses did not have any lighting to illuminate the loading area. Neither the backup

lights nor the backup alarm on the forklift were working.

The Estate of Dwaine D. Gurtz sued Wright Brothers Farm for negligence in failing to light the loading area properly and failing to warn Gurtz of known dangers on the property. The trial court granted summary judgment for Wright Brothers Farm and the Court of Appeals affirmed. *Rhodes v. Wright*, 790 N.E.2d 577, 578 (Ind.Ct.App.2003). We granted transfer pursuant to Ind. Appellate Rule 58(A) and now reverse.

### Discussion

### I

■ A party is entitled to summary judgment if no material facts are in dispute and as the facts stand, under the law, the party is entitled to a judgment in its favor. Ind. Trial Rule 56(C) ("The judgment sought shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). Summary judgment is therefore appropriate when the undisputed material evidence negates one element of a claim. *Reed v. Beachy Constr. Corp.*, 781 N.E.2d 1145, 1148 (Ind.Ct.App.2002), *trans. denied*, 792 N.E.2d 42 (Ind.2003). Plaintiffs allege that Defendants committed the tort of negligence, which has three elements: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach. *Estate of Heck v. Stoffer*, 786 N.E.2d 265, 268 (Ind.2003); *Douglass v. Irvin*, 549 N.E.2d 368, 369 (Ind.1990).

■ The Court of Appeals affirmed summary judgment for Defendants in part because it found that they did not owe a duty to Gurtz because they did not exert control over the area where the accident occurred when it occurred. *Rhodes*, 790

N.E.2d at 580–81. The court based its conclusion on the contract between Tyson and Defendants. *Id.* at 580. Plaintiffs contend that the Court of Appeals erred in using the contract between Tyson and Defendants, instead of Indiana law, to determine if Defendants owed a duty to Gurtz.

■ Plaintiffs are correct that Indiana law governs whether Defendants owed a duty to Gurtz. The Court of Appeals placed too much emphasis on the contract between Tyson and Defendants in determining that no duty existed. The contract aids in understanding the business relationship between Tyson and Defendants, but that is all. A person cannot limit his or her tort law duty to third parties by contract. *Young v. Tri–Etch, Inc.*, 790 N.E.2d 456, 459 (Ind.2003) (reversing grant of summary judgment for defendant where estate of liquor store employee sued alarm service company for wrongful death; one-year statute of limitations in contract between liquor store and alarm company did not apply to employee because employee was not a party to the contract); *Morris v. McDonald's Corp.*, 650 N.E.2d 1219, 1221–23 (Ind.Ct.App.1995) (reversing summary judgment and holding plaintiff injured at McDonald's could sue McDonald's despite exculpatory and indemnity clauses in contract between McDonald's and franchise operator because injured plaintiff was not a party to that contract).

■ In premises liability cases, whether a duty is owed depends primarily upon whether the defendant was in control of the premises when the accident occurred. The rationale is to subject to liability the person who could have known of any dangers on the land and therefore could have acted to prevent any foreseeable harm. *Harris v. Traini*, 759 N.E.2d 215, 225 (Ind.Ct.App.2001) ("Only the party who controls the land can remedy the hazardous conditions which exist upon it

and only the party who controls the land has the right to prevent others from coming onto it." (quotations and citations omitted)), *trans. denied,* 774 N.E.2d 516 (Ind. 2002).

Plaintiffs contend that as owners of the land, Defendants controlled it. They state:

> Wright Brothers Farm (1) owned the loading area where Gurtz was struck; (2) was responsible for maintaining that loading area; (3) determined who could enter its property and when; (4) received advance notice of Tyson's scheduled arrivals; (5) gave permission to Tyson to operate the forklift on the property; and (6) was required under the [contract] to be present while the chickens were caught.

(Reply Br. in Support of Pet. to Transfer at 2.) Defendants argue that they cannot be held liable for Gurtz's death because they did not control the area where the accident occurred when it occurred. According to Defendants, when Tyson employees arrive to catch chickens, they take over the property. Tyson's workers take charge of the chicken houses and loading area, and Defendants do not instruct Tyson employees on how to perform their job. Accordingly, Defendants maintain that at the time Gurtz was killed, Tyson controlled the land, so only Tyson can be held responsible for harm to its employees.

■ Generally, whether a duty exists is a question of law for the court to decide. *Hooks SuperX, Inc. v. McLaughlin,* 642 N.E.2d 514, 517 (Ind.1994). Sometimes, however, the existence of a duty depends upon underlying facts that require resolution by the trier of fact. *Douglass,* 549 N.E.2d at 369 n. 1 (" 'While it is clear that the trial court must determine if an existing relationship gives rise to a duty, it must also be noted that a factual question may be interwoven with the determination of the existence of a relationship, thus making the ultimate existence of a duty a mixed question of law and fact.' " (quoting *Clyde E. Williams & Assocs. v. Boatman,* 176 Ind.App. 430, 435, 375 N.E.2d 1138, 1141 (1978))).

We think that there is a sufficient factual dispute about whether Tyson or Defendants controlled the premises where and when the accident occurred that a jury should decide the question. *See Carroll by Carroll v. Jagoe Homes, Inc.,* 677 N.E.2d 612, 616 (Ind.Ct.App.1997) (reversing summary judgment because there was a genuine issue of material fact regarding whether defendant was a possessor of the premises where plaintiff was injured), *trans. denied,* 690 N.E.2d 1181 (Ind.1997); *see also Crist v. K–Mart Corp.,* 653 N.E.2d 140, 145 (Ind.Ct.App.1995) (stating that "one commentator has described possession as 'a question of fact involving occupation and intent to control the particular area where the injury occurred' " (quoting Joseph A. Page, *The Law of Premises Liability* 3 (2d ed.1988))), *trans. denied.*

Furthermore, even if Tyson controlled the premises while it caught chickens, that would not automatically relieve Defendants of responsibility for injuries to Tyson's employees. Defendants have always controlled the external lighting. Tyson provided its contract growers with specifications for building the chicken houses, but Tyson never prescribed any procedure for external lighting around the chicken houses. It neither required nor forbid the installation of external lights. Out of approximately 50 growers that Tyson employs, "[a]lmost all of the Tyson growers have external lights outside the entrances to their chicken houses. Less than five do not have external lights." (Appellants' App. at 103.) The lack of lighting may have contributed to the accident. The Tyson employee that struck Gurtz with his forklift admitted that "external lights are used to illuminate the loading area so 'the

drivers can see.'" (*Id.* (quoting Berry Dep. at 129).)

Because the facts are in dispute as to whether Tyson or Defendants controlled the area where the accident occurred at the time it occurred and because Defendants controlled the external lighting that may have contributed to Gurtz's death, summary judgment is inappropriate on this issue.

Additionally, the parties disagree as to Gurtz's status, which could affect the substance of the possible duty owed by Defendants. Plaintiffs assert that Gurtz was an invitee on Defendants property and so Defendants owed him a duty to keep the premises in a reasonably safe condition. Defendants disagree and argue that because Tyson was in control of the area at the time of the accident "Gurtz ... was not an invitee of the Wrights *at the time,* and *in the place,* that he was struck and killed by his co-employee...." (Br. in Resp. to Pet. to Transfer at 8.)

Defendants, however, have already admitted that Gurtz was an invitee or business visitor "[a]t the time of the incident." (Appellants' App. at 128.) Under Ind. Trial Rule 36(B), admissions are "conclusively established unless the court on motion permits withdrawal or amendment of the admission." Defendants have not made any motion to withdraw or amend these admissions, but instead attempt unsuccessfully to recast their previous statements. In any event, we view Defendants' argument here to be equivalent to their assertion discussed *supra* that Tyson, and not Defendants, controlled the area. As we have seen, whether and to what extent Tyson controlled the premises is a question of fact not amenable to resolution by summary judgment.

## II

■ Defendants raised several additional arguments for granting summary judg-

ment in their favor: (1) that the alleged dangers were obvious; (2) that Mark Wright was not aware of any of the alleged hazards; (3) that Defendants lacked knowledge superior to Gurtz; and (4) that the lighting was not a proximate cause of the accident.

■ In negligence cases, summary judgment is "rarely appropriate." *Tibbs v. Huber, Hunt & Nichols, Inc.,* 668 N.E.2d 248, 249 (Ind.1996); *accord Guy's Concrete, Inc. v. Crawford,* 793 N.E.2d 288, 293 (Ind.Ct.App.2003), *trans. denied,* 804 N.E.2d 760 (Ind. Dec. 18, 2003). This is because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence.

The Court of Appeals affirmed the trial court's grant of summary judgment in part on the ground that the danger—reduced visibility—was obvious. *Rhodes,* 790 N.E.2d at 580. Plaintiffs argue that the court misunderstood what the danger was. "The danger was not darkness per se or even the operation of a forklift at night. Rather, the danger was that the forklift was being operated backward (1) in the dark; (2) without working back lights; and (3) without a working back-up alarm." (Pet. to Transfer at 7.) This danger, Plaintiffs contend, was not obvious but latent.

■ If the danger were obvious, then Defendants probably would not be liable. Restatement (Second) of Torts § 343A(1) states: "A possessor of land is not liable to his invitees for physical harm caused to them by an activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." In this instance, we cannot say with certainty what the danger was, so we cannot say whether it was obvious.

The facts surrounding Gurtz's death do not suggest one clear danger. There were no external lights on the chicken houses and no working backup lights or working backup alarm on the forklift. Any one of these factors, or some combined, could have been dangerous and thus required Defendants either to warn Gurtz or to take precautionary measures. And, the obviousness of any danger still would not resolve the issue. If Defendants were able to anticipate any potential harm, they may have been required to take some action to prevent it. Defendants concede on appeal "that there is an issue of fact as to whether Mark Wright knew that the backup lights and backup alarm on the forklift were not working at the time of the accident." (Br. of Appellees at 6.)

■ This concession also undermines Defendants' argument that Gurtz had superior knowledge of the situation, which Defendants suggest would relieve them of a duty to warn Gurtz of any alleged danger. We disagree. Whether a landowner has superior knowledge goes to the question of breach, not of duty, and it is one factor among many used to determine if there was a breach. *Douglass*, 549 N.E.2d at 370–72. Further, even if a jury were to find that Defendants were not negligent in failing to warn Gurtz, it could still find that Defendants were negligent in failing to take precautionary measures, such as installing external lighting.

■ Just as we cannot say with certainty what the danger was and whether it was obvious, we also cannot say with certainty that the lack of outside lighting was not a proximate cause of Gurtz's death. One's action or omission is the proximate cause of an injury when " 'the ultimate injury [is] one that was foreseen, or reasonably should have been foreseen, as the natural and probable consequence of the act or omission.' " *Vernon v. Kroger Co.*, 712 N.E.2d 976, 981 (Ind.1999)

(quoting *Havert v. Caldwell*, 452 N.E.2d 154, 158 (Ind.1983)). The question of proximate cause is one usually left to the jury. *Id.* (stating that proximate cause "is primarily a question of fact to be determined by the jury"); *Bridgewater v. Econ. Eng'g Co.*, 486 N.E.2d 484, 487 (Ind.1985) ("It is true that summary judgments are rarely granted in negligence actions when the sole issue is either proximate cause or contributory negligence."). In this case, the proximate cause inquiry is a question of which missing safety device caused Gurtz's death or which, if present, could have prevented his death. The facts do not dictate a single answer. *Palmer & Sons Paving, Inc. v. N. Ind. Pub. Serv. Co.*, 758 N.E.2d 550, 557–58 (Ind.Ct.App. 2001) ("[B]ecause we are unable to predict what would have happened had there been barricades around the shed or signs posted on the shed, we cannot rule out the possibility that the ... incident could have been avoided. Thus, we cannot find that the facts are undisputed and lead to but a single inference or conclusion.").

These four grounds raised by Defendants in support of summary judgment cannot be resolved in such a hasty manner. The facts do not provide a clear answer as a matter of law, and a reasonable jury could find for either party on any of these issues. Summary judgment is therefore inappropriate.

### Conclusion

Having previously granted transfer, we now reverse the judgment of the trial court. This case is remanded to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.